The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts as those reached by the Deputy Commissioner, with some modifications but modify the conclusions and holding of the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commissioner finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Order, at the hearing and after the hearing as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case.
2. The parties are properly before the Industrial Commission.
3. The parties were subject to and bound by the provision of the North Carolina Workers' Compensation Act at all relevant times.
4. The employee sustained an injury by accident arising out of the course and scope of his employment on August 10, 1994 and disability from the injury by accident started on August 13, 1994.
4. The Travelers Insurance Company was the carrier on the risk.
5. Plaintiff's average weekly wage of $400.00, yielding a compensation rate of $266.68.
6. The parties stipulated that workers' compensation benefits were paid to the plaintiff from August 13, 1994 through September 27, 1994.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. Plaintiff is 64 year old male with a 10th grade education, who began working in 1949 as brick mason. Also plaintiff worked for about 17 years as a machinist and about 25-30 years as a carpenter. Plaintiff began working as a carpenter for defendant-employer in February 1994 and on August 10, 1994 he sustained an admittedly compensable injury to his low back when he and a co-worker lifted a heavy door.
2. He was initially seen in the emergency room at Memorial Mission Hospital. Subsequently, on August 19, 1994 he came under the care of Dr. Freeman Broadwell, III, director of Thoms Rehabilitation Hospital. Plaintiff complained of low back pain but did not make any complaints concerning his shoulder. Findings on examination included, among others, no positive findings or abnormalities of the shoulders, and tenderness as well as restricted motion of the back and an altered gait. Plaintiff was then placed on a regimen of physical therapy for treatment of lumbar radiculopathy. When plaintiff saw Dr. Broadwell on September 5, 1994, he related that his back pain was improving but still he did not make any complaints of shoulder pain. A physical therapist note dated September 16, 1994 indicates that plaintiff had been planting shrubbery in his yard and riding a lawn mower.
3. Plaintiff saw Dr. Broadwell on September 27, 1994 and at that time plaintiff had completed his course of physical therapy for his back, his low back pain was asymptomatic and his lumbar radiculopathy had resolved. During this visit plaintiff related for the first time that he had experienced some shoulder pain before the August 10, 1994 injury by accident, but that the shoulder pain had become much worse after doing some fairly vigorous yard work about a week before September 27, 1994. The yard work involved digging holes, and planting shrubbery which resulted in shoulder pain. Plaintiff also stated that his left shoulder pain was worse than his back pain had ever been.
4. On September 27, 1994 Dr. Broadwell released plaintiff from his care for treatment of his back. Plaintiff was released to return to his regular work as a carpenter. Dr. Broadwell did not evaluate or treat the plaintiff for his shoulder problem.
5. On September 12, 1994 plaintiff saw Dr. Joseph Dement, an orthopedic surgeon, with a chief complaint of left shoulder pain. Other complaints at that time included pain in the left hand, back, and both ankles. On examination, the bursa in the left shoulder was tender but his low back was asymptomatic. Dr. Dement prescribed medications for treatment of plaintiff's left shoulder bursitis and gave him booklets on exercises and mechanics concerning the shoulder. Bursitis is a condition that waxes and wanes and is not usually a chronic problem. More often than not, it is related to activity and only occasionally is related to an injury.
6. On October 4, 1994 Dr. Dement injected the plaintiff's bursa, and subsequently, Dr. Dement released plaintiff from his care on October 18, 1994 as he had improved and there was no indication that any further treatment was needed. Dr. Dement further released the plaintiff on October 24, 1994, to return to his regular work as a carpenter.
7. Defendants presented evidence that there was work available for the plaintiff with the defendant-employer as a carpenter, but there is no evidence that a job was actually offerred to plaintiff. Plaintiff never returned to work for defendants.
8. On January 10, 1995 plaintiff was again seen by Dr. Dement and complained of increased shoulder pain. He received an injection and was again discharged from the physician's care. Dr. Dement next saw him in February 1995 for complaints of a flare-up of his shoulder pain and in April 1995 for complaints of left knee, left shoulder, left hip and low back pain. Dr. Dement again released him from his care to return to work. Plaintiff was seen by Dr. Doyle, an associate of Dr. Dement, on June 21, 1995 for left shoulder complaints and was rescheduled for a return appointment for July 13, 1995 but plaintiff did not go in for that appointment.
9. Since April 12, 1994 and continuing through at least June 1995, plaintiff was seen by his family physician, Dr. Ronald Bush, for generalized osteoarthritis with attendant musculoskeletal pain in various areas and joints, including the neck, the ankles, right elbow and forearm, and fingers; depression; hypertension; acute bronchitis; and diabetes with peripheral neuropathy.
10. After the compensable injury by accident, plaintiff first sought employment in May 1996, at which time he began working at a service station where he received payment for gas and where he worked for four weeks before quitting.
11. As a result of the compensable injury by accident, plaintiff sustained lumbar strain and radiculopathy which rendered him unable to earn any wages in any employment from August 13, 1994 through September 27, 1994. By September 27, 1994, he had reached the end of the healing period from the accident, had been released to return to his regular job with no restrictions, and retained no permanent partial impairment of his back due to that accident. With respect to his compensable back injury, he had the capacity to earn as a carpenter the same wages he had been earning prior to the accident.
12. Although the defendants submitted to plaintiff a Form 21 Agreement for Compensation on several occasions, plaintiff failed to sign the agreement and it was never submitted to the Commission for approval. However, defendants accepted the claim as compensable and paid temporary total disability compensation to plaintiff from August 13, 1994, through September 27, 1994.
13. There is insufficient medical evidence of record from which to prove by the greater weight that plaintiff's left shoulder bursitis is causally related to the compensable injury by accident.
14. Any disability from work which occurred after plaintiff was released to return to work September 27, 1994, is not causally related to the injury by accident of August 10, 1994, but was caused by the combination of plaintiff's other non-work-related medical conditions.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of the injury by accident of August 10, 1994, plaintiff sustained lumbar strain and radiculopathy which rendered him totally disabled from August 13, 1994 through September 27, 1994, for which he has been paid workers' compensation benefits. Any continuing disability after September 27, 1994, was not caused by the compensable injury but was due to his numerous other medical problems. N.C. Gen. Stat. § 97-2 (9); N.C. Gen. Stat. § 97-29.
2. By September 27, 1994 plaintiff reached the end of the healing period from the injury by accident and retains no permanent partial impairment of the back as a result of that accident. N.C. Gen. Stat. § 97-31 (23).
3. Plaintiff is entitled to have defendants continue to pay for any medical bills that are related to plaintiff's admittedly compensable back injury when bills for the same have been submitted to defendant-insurer and approved by the procedures adopted by the N.C. Industrial Commission. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for additional workers' compensation benefits is hereby DENIED.
2. Defendants shall pay all reasonable medical expenses incurred or to be incurred by plaintiff that are related to the compensable back injury.
3. Each side shall pay its own cost.
This the _____ day of June 1998.
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ____________________ RENÉE C. RIGGSBEE COMMISSIONER
BSB/jth